Sara Khosroabadi, Esq. (SBN: 299642)
sara@westcoastlitigation.com
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
**Hyde & Swigart**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

Attorneys for Brigitte Peistrup

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIGITTE PEISTRUP,<br><br>          Plaintiff,<br><br>v.<br><br>CITIBANK, N.A., LEGAL RECOVERY LAW OFFICES, INC., and ICON EQUITIES, LLC,<br><br>          Defendants. | Case No: '15CV1315 W   RBB<br><br>**Complaint For Damages**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2. The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.

3. California's Legislature wrote the Consumer Credit Reporting Agencies Act, California Civil Code § 1785 *et seq*. to regulate consumer credit reporting agencies in a manner which will best protect the interests of the people of the State of California, requiring that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy,

relevancy, and proper utilization of such information in accordance with the requirements of this title.

4. Brigitte Peistrup, ("Plaintiff"), through Plaintiff's attorneys, brings this action to challenge the actions of Citibank, N.A. ("Citibank"), Legal Recovery Law Offices, Inc. ("LRLO") and Icon Equities, LLC ("Icon"), (collectively "Defendants"), with regard to attempts by Defendants to unlawfully and abusively collect a debt allegedly owed by Plaintiff, the inaccurate reporting of credit information to credit reporting agencies, and this conduct caused Plaintiff damages.

5. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which Plaintiff alleges on personal knowledge.

6. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

7. Unless otherwise stated, all the conduct engaged in by Defendants took place in California.

8. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

**JURISDICTION AND VENUE**

9. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1692k, and 28 U.S.C. § 1367 for supplemental state claims.

10. This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA"), the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.32 ("Rosenthal Act"), and California Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code § 1785 *et seq*.

11. Plaintiff is a natural person who resides in the State of California.

12. Defendant LRLO is located in the City of San Diego, in the State of California

13. Because Defendants do business within the State of California, personal jurisdiction is established.

14. Defendant LRLO resides, as an entity with the capacity to sue and be sued in its common name, within the County of San Diego.

15. Because Defendant LRLO resides within the County of San Diego, which is within the judicial district in which this action is brought, venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

16. At all times relevant, Defendants conducted business within the State of California, thus venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

**PARTIES**

17. Plaintiff is a natural person who resides in the City of , State of California. Plaintiff is a "consumer" as that term is defined by CCRAA § 1785.3(b).

18. Defendant, Citibank, N.A. ("Citibank") is located in the City of New York, in the State of New York.  Citibank is a "person" as defined by CCRAA §1785.3(j) as well as a "furnisher" as contemplated by CCRAA §1785.25.

19. Defendant, Legal Recovery Law Offices, Inc. ("LRLO") is located in the City of San Diego, in the State of California.

20. Defendant, Icon Equities, LLC ("Icon") is located in the City of Irvine, in the State of California.

21. Plaintiff is obligated or allegedly obligated to pay a debt, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

22. Defendants are persons who use an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts, or who regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and are therefore debt collectors as that phrase is defined by 15 U.S.C. § 1692a(6).

23. Plaintiff is a natural person from whom a debt collector sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiff, and is a "debtor" as that term is defined by California Civil Code § 1788.2(h).

24. Defendants, in the ordinary course of business, regularly, on behalf of themselves, or others, engage in debt collection as that term is defined by California Civil Code § 1788.2(b), are therefore debt collectors as that term is defined by California Civil Code § 1788.2(c).

25. This case involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. As such, this action arises out of a consumer debt and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

### BACKGROUND ON CREDIT REPORTING

26. In an effort to comply with the CCRAA and federal credit reporting statutes in the most efficient manner, consumer reporting agencies (such as Experian, Equifax, and Transunion) have adopted a uniform system to gather and report information about consumers as well as process and correct inaccuracies and disputes.

27. "Metro 2" is the credit reporting software that was developed as a standard for the credit reporting industry and provides one standard layout to be used by all furnishers of information to the consumer reporting agencies.

28. Metro 2 provides a resource guide to each user which explains the proper procedures for reporting information, reporting on investigations, and correcting information.

29. Individual furnishers (parties that grant credit and report to credit bureaus) must be approved by each bureau to report information to that bureau.

30. Once approved, the furnishers are able provide information to credit bureaus through the Metro 2 system.

31. In addition to the Metro 2 system, the consumer credit reporting industry maintains an automated dispute resolution system to comply with the Fair Credit Reporting Act's dispute procedure mandated under 15 U.S.C. § 1681i which provides consumers with a method to dispute inaccuracies found on credit reports.

32. This system, called e-OSCAR®, Online Solution for Complete and Accurate Reporting, is available for use by all data furnishers and consumer reporting agencies.

33. Each consumer reporting agency and data furnisher is provided with their own access to e-OSCAR®.

34. When a consumer contacts a consumer reporting agency with a dispute, the agency transmits the disputed information to the furnisher to investigate through e-Oscar®.

35. The data furnisher accesses e-OSCAR® and retrieves the disputed data to investigate.

36. The data furnisher then must investigate and provide results back to the bureau within thirty (30) days pursuant to 15 U.S.C. § 1681i(a)(1)(A).

37. Once the furnisher has investigated the dispute it will transmit its response through e-OSCAR®.

38. A furnisher can respond to a dispute in three ways: 1) not respond, 2) modify or delete the information, or 3) verify the reported information as accurate.

39. If a furnisher does not respond to a dispute then the information is to be modified or deleted pursuant to the dispute.

40. If the furnisher responds that the information should be modified or deleted, e-OSCAR® automatically sends the response to the originating consumer reporting agency as well as to any other consumer reporting agencies with which the data furnisher has an active registration in e-OSCAR®.

41. If the information is verified as correctly reported by the furnisher, the response is only provided to the originating consumer reporting agency through e-OSCAR®.

42. Once the consumer reporting agency receives a response to a consumer's dispute reinvestigation from the furnisher, the agency updates the credit files accordingly and pursuant to §1681(a)(6), the consumer reporting agency shall provide written notice to a consumer of the results of the reinvestigation.

43. The originating consumer agency also notifies the data furnisher of any account modifications or deletions as a result of the dispute reinvestigation.

44. When a modification or deletion has been made, data furnishers also must update their internal records to avoid re-reporting information determined to be inaccurate.

45. There are many account details that are reported by furnishers to credit reporting agencies through these systems.

46. One of the details regularly reported is when an account is paid in full and closed.

47. Metro 2 outlines the ways to report a closed account status. Specifically, whether the account was paid in full and has a zero balance before it is closed.

48. With this structure, once an account is paid in full and closed, the furnisher has two options for reporting, either report no data or report the account has a zero balance and is closed.

**FACTUAL ALLEGATIONS**

49. Sometime before April 18, 2013, Plaintiff is alleged to have incurred certain financial obligations to Citibank, while using a Citibank credit card for everyday purchases.

50. These financial obligations were primarily for personal, family or household purposes and are therefore a "debt" as that term is defined by 15 U.S.C. §1692a(5).

51. These alleged obligations were money, property, or their equivalent, which is due or owing, or alleged to be due or owing, from a natural person to another person and are therefore a "debt" as that term is defined by California Civil Code §1788.2(d), and a "consumer debt" as that term is defined by California Civil Code §1788.2(f).

52. Sometime prior to April 18, 2013, Thomas Peistrup, Plaintiff's husband, obtained power of attorney to handle Plaintiff's banking and other financial institution transactions.

53. Sometime thereafter, but before April 18, 2013, Plaintiff allegedly fell behind in the payments allegedly owed on the alleged debt. As it is irrelevant to this action, Plaintiff currently takes no position as to the validity of this alleged debt.

### *CITIBANK, N.A.*

54. On or about April 18, 2013, Mr. Peistrup mailed to Citibank's correspondence and dispute address, a written offer to compromise a full and final settlement of Plaintiff's Citibank account ending in 4632 ("Account") for a total one time payment of $6,000 from him as a non-obligated third-party. Specifically, the terms were as follows:

> "Enclosed please find Check No. 234, in the amount of $6,000, in full and final payment on the account. This offer and payment is conditioned on the following:
>
> 1. Closing of the account with the lump-sum payment of $6,000 deemed payment in full.
> 2. Check is valid for ten (10) days and expires on April 28, 2013.
> 3. No negative credit reporting. The account is to be reported to all credit reporting agencies as "paid in full," or, in the alternative, all references to the account deleted with no further credit reporting. This term is of the essence of any settlement."

55. The offer of full settlement of the account included a check payable to Citibank.
56. Additionally, on the back of the check Mr. Peistrup wrote the following:
    > "In tendering this check, Payee agrees to the terms set forth in attached correspondence dated April 18, 2013."
57. Subsequently, Citibank accepted the offer and deposited the check.
58. Pursuant to the settlement, Plaintiff's account was paid in full and should have been subsequently closed.
59. Citibank failed to properly close the account.

*PLAINTIFF DISCOVERS THE CREDIT ERROR*

60. In or about September of 2013, Plaintiff checked her credit report and discovered that Citibank was continuing to report the account as open and delinquent.
61. Subsequently, Plaintiff sent a letter to Citibank disputing the credit information they were reporting, informing them that the account, pursuant to the terms of the settlement, should be reported as closed, and providing documentation as to the settlement.
62. On or about October 1, 2013, Citibank mailed a letter to Plaintiff regarding her dispute of the information being reported to the credit reporting agencies. Plaintiff received the letter shortly thereafter. In the letter, Citibank stated: "Our records indicate that the information on your credit report is correct," adding the "account has been reported as disputed to the credit bureaus."
63. Defendant Citibank has continued to report that the account was not closed according to the terms of the April 18, 2013, settlement.
64. Through this conduct, Citibank violated CCRAA § 1785.25(a) by continuing to furnish information to a consumer credit reporting agency knowing the information was inaccurate.

65. Subsequently, but before April 13, 2014, the alleged debt was assigned, placed, or otherwise transferred, to Defendants Icon and LRLO for collection.
66. On or about May 1, 2014, Mr. Peistrup contacted Defendant LRLO, as representative of Defendant Icon, to discuss the alleged debt and credit reporting of that alleged debt.
67. During that communication, Mr. Peistrup informed Defendant LRLO as to the existence and terms of the April 18, 2013, settlement offer, including that Citibank had accepted the settlement by accepting a payment from a third-party.
68. On or about May 2, 2014, Mr. Peistrup sent a letter to Defendant LRLO memorializing the contents of the May 1, 2014, communication. In addition, Plaintiff enclosed copies of the April 18, 2013, settlement offer along with all supporting documentation proving the existence of the settlement offer, and that Citibank accepted the settlement by accepting the endorsement-restricted payment.
69. Defendant Icon has continued to report that the account was not closed according to the terms of the April 18, 2013, settlement.
70. Through this conduct, Icon violated CCRAA § 1785.25(a) by continuing to furnish information to a consumer credit reporting agency knowing the information was inaccurate.

*THE COMPLAINT*

71. On or about June 16, 2014, Defendant LRLO filed a complaint on behalf of Icon alleging an Account Stated against Plaintiff.
72. The complaint alleges that Plaintiff owes Citibank monies for an outstanding balance on the Account.
73. The complaint further alleges that Icon is the assignee and/or sole owner of the Account.
74. The complaint alleges Plaintiff owes Icon $9,085.70.

75. The complaint further alleges that Plaintiff agreed to pay these monies to the Original Creditor, Citibank, as provided for in the agreement between Plaintiff and the Original Creditor.

76. Plaintiff owes nothing more to Citibank or Icon as the account was settled in April 2013.

77. Through this conduct, Defendants made a statement which was false, deceptive, or a misleading representation or means in connection with the collection of a debt.  As such, this action by Defendants violated 15 U.S.C. §§ 1692e and 1692e(10), and because this action violated the language in 15 U.S.C. §§ 1692e and 1692e(10), it also violated Cal. Civ. Code § 1788.17.

78. Through this conduct, Defendants were collecting an amount (including any interest, fee, charge, or expense incidental to the principal obligation) when such amount was not expressly authorized by the agreement creating the debt or permitted by law.  Consequently, Defendants violated 15 U.S.C. § 1692f(1) and Cal. Civ. Code § 1788.17.

79. Because this conduct violated certain portions of the federal Fair Debt Collection Practices Act as these portions are incorporated by reference in the Rosenthal Fair Debt Collection Practices Act, through California Civil Code § 1788.17, this conduct or omission violated Cal. Civ. Code § 1788.17.

## *THE LETTER*

80. On or about June 24, 2014, Defendant LRLO mailed a dunning letter on behalf of Icon to Plaintiff.  A few days later, Plaintiff received that letter.

81. This communication to Plaintiff was a "communication" as that term is defined by 15 U.S.C. § 1692a(2), and an "initial communication" consistent with 15 U.S.C. § 1692g(a).

82. This communication was a "debt collection" as Cal. Civ. Code 1788.2(b) defines that phrase, and an "initial communication" consistent with Cal. Civ. Code § 1812.700(b).

83. The letter identifies Icon as the client and Citibank as the original creditor.
84. The alleged debt is for the Citibank Account.
85. The letter states the following:

> "As of the date of this letter, the client named above claims you have a delinquent account owed having a current balance of $9,365.70. This balance may include court costs and interest. The client above may also be entitled to court costs and interest not yet included in the balance amount."

86. Plaintiff previously settled the Account in full with Citibank.
87. Defendant LRLO was attempting to collect monies that Icon was not owed.
88. Even if there is no settlement, Icon is not entitled to collect court costs as no judgment has been rendered.
89. Through this conduct, Defendants used a false, deceptive, or misleading representation or means in connection with the collection of a debt. Consequently, Defendants Icon and LRLO violated 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(10) and Cal. Civ. Code § 1788.17.
90. Through this conduct, Defendants were collecting an amount (including any interest, fee, charge, or expense incidental to the principal obligation) when such amount was not expressly authorized by the agreement creating the debt or permitted by law. Consequently, Defendants Icon and LRLO violated 15 U.S.C. § 1692f(1) and Cal. Civ. Code § 1788.17.
91. Through this conduct, Defendants threatened to take action that cannot legally be taken or that is not intended to be taken. Consequently, Defendants Icon and LRLO violated 15 U.S.C. § 1692e(5) and Cal. Civ. Code § 1788.17.
92. Because this conduct by Defendants violated certain portions of the federal Fair Debt Collection Practices Act as these portions are incorporated by reference in the Rosenthal Fair Debt Collection Practices Act, through

California Civil Code § 1788.17, this conduct or omission violated Cal. Civ. Code § 1788.17.

## CAUSES OF ACTION
## COUNT I
## FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)
## 15 U.S.C. §§ 1692 ET SEQ.
## AS TO DEFENDANTS ICON AND LRLO

93. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

94. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

95. As a result of each and every violation of the FDCPA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every defendant, jointly and severally.

## COUNT II
## ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (ROSENTHAL ACT)
## CAL. CIV. CODE §§ 1788-1788.32
## AS TO CITIBANK AND ICON

96. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

97. The foregoing acts and omissions constitute numerous and multiple violations of the Rosenthal Act, including but not limited to each and every one of the above-cited provisions of the Rosenthal Act, Cal. Civ. Code §§ 1788-1788.32

98. As a result of each and every violation of the Rosenthal Act, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a);

statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from each and every defendant, jointly and severally.

## COUNT III
## CONSUMER CREDIT REPORTING AGENCIES ACT (CCRAA)
## (CAL. CIVIL CODE § 1785 ET SEQ.)
## AGAINST DEFENDANT CITIBANK

99. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

100. The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of CCRAA § 1785.25(a).

101. As a result of each and every violation of the CCRAA, Plaintiff suffered denials of credit, worry, fear, distress, frustration, damage to reputation, embarrassment, humiliation, loss of economic opportunity and lost opportunity to obtain credit and is entitled to any actual damages sustained, statutory damages, punitive damages, and reasonable attorney's fees and costs from Defendant Citibank.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants, and Plaintiff be awarded damages from Defendants, as follows:

- An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);
- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3);
- An award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b);

• An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c).

• That there be Judgment in favor of Plaintiff and against Defendant Citibank for all reasonable damages sustained by Plaintiff, including but not limited to actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing her credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security and for punitive/ exemplary damages, attorneys fees, court costs and other assessments proper by law and any and all other applicable state laws, together with legal interest thereon from date of judicial demand until paid; and

• That this Honorable Court order Citibank to reinvestigate and correct the credit report of Plaintiff, data emanations, and credit history of Plaintiff;

• Plaintiff further Prays for all such additional, general and equitable relief as may be necessary and proper.

102. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Respectfully submitted,

**Hyde & Swigart**

Date: June 15, 2015                    By: s/   Sara Khosroabadi
                                            Sara Khosroabadi
                                            Attorneys for Plaintiff